UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THOMAS BODNAR, ET AL. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 09-7686 |
| | * | |
| NEWPORT CORPORATION OF LOUISIANA, ET AL. | * | SECTION "B"(2) |

ORDER AND REASONS

Before the Court is Defendants' Motion to Dismiss seeking dismissal of claims against the individual defendants (Rec. Doc. No. 63), Plaintiffs have filed opposition thereto at Rec. Doc. No. 77. Additionally, before the Court is the joint briefing of the parties regarding the effect of defendants' Notice of Bankruptcy at Rec. Doc. No. 79 and the effect of that stay on the parties. After reviewing the applicable law and the record before the Court, for the reasons pronounced below,

IT IS ORDERED that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rec. Doc. No. 63) be and is hereby GRANTED IN PART and DENIED IN PART; the motion is GRANTED to the extent that the claims of unjust enrichment of all Plaintiffs with the exception of Plaintiffs Bodnar and Reed are hereby DISMISSED, and DENIED in all other respects.

IT IS FURTHER ORDERED that the automatic stay of proceedings pursuant to 11 U.S.C. § 362 is applied only against the debtor in the related bankruptcy proceeding, Bourbon Saloon, Inc. and no

1

further; proceedings against the debtor's co-defendants are not stayed.

I. *Cause of Action and Facts of Case*

This action arising under the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 216(b)) and the Civil Rights Act (42 U.S.C. § 1981) was filed by Plaintiffs, all were workers at French Quarter restaurants that were "own[ed], control[ed], and/or manage[d]" by defendant, "including Tony Moran's Restaurant and Jean Lafitte Bistro. . . ." (Rec. Doc. No. 1 at 1). Plaintiffs' complaint alleges Defendants withheld their wages by refusing to pay for all hours worked, not paying workers on time, failing to pay overtime, improperly withholding tips, under reporting hours to state agencies, breaching employee-employer contracts regarding wage rates and promotions, not promoting based on race, and "discriminatorily assigning nonwhite workers to less favorable work assignments and unlawfully retaliating against works for asserting their legal rights." *Id*. at 1-2.

Plaintiffs name six individual defendants in their second amended complaint as follows (1) Yousef Wafiq Salem Aladwan a/k/a J'obert Salem, (2) Samer Aladwan, (3) Carolyn Pierce, (4) Givanni Zedda, (5) Ismail Salem, and (6) Gregory Bonstaff; all of whom are alleged to have been or are either a manager of daily operations, director or officer, or Controller of one or all defendant business corporations and LLCs. (Rec. Doc. No. 50 at 6).

2

II. *Contentions of the Parties*

A.   <u>Contentions of Defendants</u>

Defendants first contend that Plaintiffs' § 1981 claims against all individual defendants should be dismissed citing the Fifth Circuit's opinion in *Felton v. Polles*, 315 F.3d 470 (5th Cir. 2002).[1]

Defendants' primary argument underlying contentions that state employment discrimination and wage payment claims should be dismissed is that the individual defendants do not fit the statutory definition of "employer" and thus Plaintiffs' claims should be dismissed. (Rec. Doc. No. 63-1 at 3-5).

Defendants next contend that claims of negligent misrepresentation against individual defendants must be dismissed as such a tort theory, among other elements, requires the existence of a legal duty on defendants' part to supply correct information to a plaintiff, not, as Plaintiffs allege, a "third-party government/State agency". (Rec. Doc. No. 63-1 at 6)(quoting Rec. Doc. No. 50 at 26). As the requisite duty to supply Plaintiffs information did not exist for *all* Defendants, Defendants argue, those claims must be dismissed. (Rec. Doc. No. 63-1 at 6).

Defendants assert that claims of unjust enrichment must be dismissed as to *all* Defendants because of the availability of other

---

[1]Plaintiffs rightly note that the court in *Felton* "did not foreclose individual liability, rather it dismissed the claim on qualified immunity grounds." (Rec. Doc. No. 77 at 5) (citing *Felton*, 315 F.3d at 483).

3

legal relief. *Id.* They claim that as "Plaintiffs clearly assert[]
legal claims pursuant to FLSA and La. R.S. 23:631 *et seq.*" for what
Defendants allege are "the same damages", "another legal remedy is
available". *Id.* at 7.

B.   <u>Contentions of Plaintiffs</u>

Plaintiffs contend that claims under § 1981 should be allowed
to proceed, as individual defendants may be found liable for
discriminatory acts pursuant to Fifth Circuit precedent. (Rec.
Doc. No. 77 at 4-5). Next, they argue against dismissal of claims
under Louisiana employment discrimination and wage payment statutes
because the second amended complaint alleges the individual
defendants are "employers" within the statutory definitions of the
statutes.[2] *Id.* at 6-12.

Regarding claims for negligent misrepresentation of Plaintiff
Susanne Zeilinger's work hours, allegedly resulting in her denial
of unemployment insurance benefits, Plaintiffs contend that under
Louisiana law and jurisprudence, "the duty to supply correct
information extends to disclosures to third parties." (Rec. Doc.
No. 77 at 14). As such, Plaintiffs contend their allegations of
Defendants' failure to supply correct information about Zeilinger
to the Louisiana Workforce Commission precludes dismissal of these

---

[2]Before countering Defendants' argument that Plaintiffs' negligent
misrepresentation claims should be dismissed, Plaintiffs submit that "as alleged
in the Second Amended Complaint, relationships between defendants permit
plaintiffs to 'pierce the corporate veil' to prove liability." (Rec. Doc. No.
77 at 12-13).

claims.  *Id.* at 15.

Finally, Plaintiffs argue that claims for unjust enrichment are "alternative pleadings and must go forward" regardless of the availability of other legal remedies.  *Id.* at 16.  "Plaintiffs also note that several of the Plaintiffs are[,] on the face of the Second Amended Complaint[,] unable to recover under the Fair Labor Standards Act or the [Louisiana Wage Payment Act] and have only unjust enrichment claims" if the jury finds a violation of FLSA was not willful, and therefore subject to the two year statute of limitations rather than the three year limitation for willful violation.[3]  *Id.* at 16-17.  The second amended complaint states that "Plaintiffs Thomas Bodnar and Terrence Reed specifically allege that Defendants have been enriched by their labor for periods of time beyond which they is [sic] unable to recover under the FLSA or the LWPA." (Rec. Doc. No. 50 at 27).  Thus, Plaintiffs contend that Bodnar and Reed have only claims for unjust enrichment; as "several more" Plaintiffs may only have such a claim depending upon the applicable statute of limitations.

III.  *Law and Analysis*

A.   12(b)(6) Standard

---

[3]It should be noted that Plaintiffs do contend that Defendants' alleged violations of FLSA were willful.  (Rec. Doc. No. 77 at 16).

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) (internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Legal conclusions "must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

Upon identifying the well-pleaded factual allegations, courts then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

B.    <u>Individual Liability Pursuant to § 1981</u>

Defendants state that although Fifth Circuit's opinion in *Felton v. Polles*, 315 F.3d 470 (5th Cir. 2002) noted that "it had not yet decided 'whether a § 1981 claim lies against an individual defendant not a party to the contract giving rise to a claim,'" it did note that liability exists where the individual is "'essentially the same' as the state . . . ." (Rec. Doc. No. 63-1 at 3).

The plaintiff in *Felton*, a long time employee of the Mississippi Department of Wildlife, Fisheries, and Parks alleged racially discriminatory conduct against the State and two of her supervisors in their individual capacities. *Id*. at 473. On appeal, the Fifth Circuit reversed the district court's denial of qualified immunity as to Plaintiffs' § 1981 and § 1983 claims. *Id*. The issues involved in *Felton* are in part distinguishable from those of the case *sub judice*; Plaintiffs here have made neither § 1983 claims nor other claims against the state or an arm of the state.   Additionally, parts of *Felton* have since been at least

partially abrogated by *Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006).

However, Fifth Circuit precedent has partially delineated the
scope of individual liability under § 1981.[4]  In *Foley v. Univ. of
Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003), where defendants
were technically co-workers of plaintiffs, the court noted that
defendants "exercised control over the faculty positions and titles
held by" the plaintiffs when making certain voting decisions that
became the predicate acts for plaintiffs' § claims pursuant to §
1981.  "We have . . . accepted that § 1981 liability will lie
against an individual defendant if that individual is "'essentially
the same' as the State for the purposes of the complained-of
conduct."  *Id.* at 337 (citing *Felton*, 315 F.3d 470, quoting *Bellows
v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)).

Simply put, "[a]n employee who exercises control over the
plaintiff with respect to an employment decision may be
individually liable if the employee was 'essentially the same' as
the employer in exercising this authority."[5]  *Miller v. Wachovia
Bank, N.A.*, 541 F.Supp.2d 858, 863 (N.D. Tex. 2008) (citing *Foley*,

---

[4]*See Faraca v. Clements*, 506 F.2d 956, 957 (5th Cir.1975); *Bellows v. Amoco Oil Co.*,118 F.3d 268, 274 (5th Cir. 1997).

[5]*See also Hicks v. IBM*, 44 F.Supp.2d 593, 597 (S.D.N.Y. 1999) (denying individual defendant's 12(b)(6) motion to dismiss plaintiff's § 1981 claims for a hostile work environment because plaintiff pleaded that defendant "exercised supervisory authority over [p]laintiff."

355 F.3d at 337-38); *see also Leige v. Capitol Chevrolet, Inc.*, 895 F.Supp. 289 (M.D. Ala. 1995) (denying defendants summary judgment motion in § 1981 wrongful discharge action because defendants, general manager and CEO of company, were in position to influence employment decisions).

Here, after discussing the positions as outlined *supra*, Plaintiffs allege that "the management team at the restaurants, Directors and Officers of Defendant corporations, and Members of Defendant corporations, are solely responsible for . . . supervisory decisions" over Plaintiffs' employment. (Rec. Doc. No. 50 at 6, 8, 10). Plaintiffs' second amended complaint sufficiently alleges facts to preclude dismissal of their § 1981 claims.

C.   Louisiana Employment Discrimination Claims

Louisiana Revised statutes 23:302(1) defines "Employee" as "an individual employed by an employer"; 23:302(2) defines "Employer" in pertinent part, as "a person, association, legal or commercial entity . . . receiving services from an employee and, in return, giving compensation of any kind to an employee." It follows the dictates of logic and common sense that individual defendants who do not meet this definition cannot be held liable for a violation of the following statutes.[6] Defendants cite *Wright*

---

[6]"It is [] well established that 'Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.'" *Johnson et al. v. Acosta et al.*, No. 10-1756, Rec. Doc. No. 32 at

*v. Sears Roebuck & Co.*, No. 09-1498, 2010 WL 148173 at *3 (W.D. La. Jan. 12, 2010) in which the district court, considering the Magistrate Judge's report and recommendations, dismissed plaintiffs' claims against individual defendants where "plaintiffs' petition contains no allegations or basis for finding that [individual] defendants . . . may be an 'employer' under Louisiana's Employment Discrimination Law. Indeed, plaintiffs do not even so argue." *Id.* at *4.

Here, Plaintiffs' second amended complaint alleges that "[a]t all times relevant to this action, the Defendants were the employers of the Plaintiffs as defined by La. Rev. Stat. 23:302(2)."[7] (Rec. Doc. No. 50 at 4). Plaintiffs further allege that Defendants "have a policy and practice of paying cash to employees in lieu of paychecks, which paychecks are, upon information and belief, printed but retained by Defendants." *Id.* at 9. The complaint also alleges that each individual defendant "employed Plaintiffs in [his/her] individual capacity." (Rec. Doc. No. 50 at 6). Thus, Plaintiffs' complaint argues that all defendants, including those individually named were "employers"

_____

12, 2010 WL 4025883 (E.D. La., 2010 Oct. 12, 2010).

[7]Plaintiffs also allege that "all Defendants are so financially related and their management so intertwined, as to together form one unified operation or together maintain an enterprise with common control, under 29 U.S.C. §203(r)." *Id.* at 6.

within the applicable statutory definition and that they "gave compensation" in cash.  These allegations preclude dismissal under Rule 12(b)(6) and as such, Defendants motion here should be denied.

D.   <u>Louisiana Wage Payment Act Claims</u>

The Louisiana Wage Payment Act ("LWPA"), La. Rev. Stat. Ann. § 23:631 *et seq.*, does not define "employee" and "employer" although, the § 631(A)(1)(a) states:

> Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

Defendants contend that the dispositive issue remains whether the individual defendants are "employers" within the context of the above quoted statute.  (Rec. Doc. No. 63-1 at 4-5).  Defendants state "it is undisputed that none of the individual defendants employed Plaintiffs."  *Id*. at 5.  However, that issue is disputed, at least in the context of a motion to dismiss.  As discussed *supra*, Plaintiffs' second amended complaint puts forth allegations sufficient to survive the analysis attendant disposition of a motion to dismiss pursuant to Rule 12(b)(6).  It remains to be seen whether in another context, *e.g.* summary judgment, there are

material factual disputes relative to Defendants' status as
employees of Plaintiffs.

     E.   Negligent Misrepresentation Claims

> Under Louisiana Civil Code article 2315, a party may
> recover in tort for economic losses caused by negligent
> misrepresentation. For the cause of action to arise,
> whether the plaintiff is a third party or a party to the
> contract/transaction, there must be a legal duty on the
> part of the defendant to supply correct information,
> there must be a breach of that duty, which can occur by
> omission as well as by affirmative misrepresentation, and
> the breach must have caused the plaintiff damage.

*Beta Technology, Inc. v. State Indus. Products Corp.*, No. 06-735,

2008 WL 4330105 at *4 (M.D. La. Sept. 15, 2008) (citing *Barrie v.*

*V.P. Exterminators, Inc.*, 625 So.2d 1007, 1015-16 (La. 1993);

*Kadlec Medical Center v. Lakeview Anesthesia Assoc.*, 527 F.3d 412,

418 (5th Cir. 2008)).

    The above cited passage does not require the existence of a

legal duty to supply correct information to the plaintiff as did

the Louisiana Court of Appeal for the First Circuit in *Busby v.*

*Parish Nat. Bank*, 464 So.2d 374, 377 (La. App. 1st Cir. 1985).

Interestingly, neither party addresses or even makes passing

mention of the problems unique to the State of Louisiana in the

context of the Erie doctrine.[8] However, when viewing the pleadings

---

[8] *See* John Burritt McArthur, *Good Intentions Gone Bad: the Special*
*No-deference Erie Rule for Louisiana State Court Decisions*, 66 La. L. Rev. 313,
337 (2006). "Erie 'does not command blind allegiance to [any] case on all fours
with the case before the court,' and, moreover, that [] 'flexibility is even
greater' when analyzing the law in Louisiana, a state where caselaw is only

and law in light of the standard for 12(b)(6) motions, it is clear that Plaintiff Susanne Zeilinger's claims for negligent misrepresentation cannot be dismissed at this juncture.

F.   Unjust Enrichment Claims

Louisiana Civil Code article 2298, codifies the Louisiana doctrine of unjust enrichment stating, in pertinent part:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The elements of an unjust enrichment claim are: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law available to the plaintiff.[9] "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy

---

'secondary information.'" *Id.* (quoting *Shelp v. National Sur. Corp.*, 333 F.2d 431, 439 (5th Cir. 1964) and *Green v. Walker*, 910 F.2d 291, 294 (5th Cir. 1990)).

[9]*Baker v. Maclay Properties Co.*, 648 So.2d 888, 897 (La. 1995). *See Westbrook v. Pike Elec., LLC*, 2011 WL 2601013 at *6-7 (E.D. La. June 30, 2011) (citing *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st. Cir. 1988)); *Bauer v. Dean Morris, L.L.P.*, 2011 WL 1303806 at *8 (E.D. La. Mar 30, 2011). *See also McCullum v. McAlister's Corp. of Mississippi*, 2010 WL 4364369 at *3 (E.D. La. Oct. 21, 2010) (citing *Baker*, 648 So.2d at 897).

is provided.'" *Westbrook v. Pike Elec., LLC*, 2011 WL 2601013 at
*6-7 (E.D. La. June 30, 2011) (citing *Walters v. MedSouth Record
Management, LLC*, 38 So. 3rd 243, 244 (La. 2010)). "The mere fact
that a plaintiff does not successfully pursue another available
remedy does not give the plaintiff the right to recover under the
theory of unjust enrichment." *Walters*, 38 So.2d at 245 (citing *Jim
Walter Homes v. Jessen*, 98-1685, p. 13 (La. App. 3 Cir. 3/31/99),
732 So.2d 699, 706).

Under the FLSA the applicable statute of limitations on a
cause of action for unpaid wages differs depending on willfulness
of the violator; the applicable portion states, in pertinent part:

> Any action . . . to enforce any cause of action for
> unpaid minimum wages, unpaid overtime compensation, or
> liquidated damages, under the Fair Labor Standards Act
> may be commenced within two years after the cause of
> action accrued, and every such action shall be forever
> barred unless commenced within two years after the cause
> of action accrued, except that a cause of action arising
> out of a willful violation may be commenced within three
> years after the cause of action accrued . . . .

29 U.S.C. § 255(a).

Here, Defendants maintain that as Plaintiffs "clearly assert[]
legal claims pursuant to FLSA and LA. R.S. 23:631 *et seq*. for these
same damages", another remedy at law is available. Plaintiffs'
second amended complaint makes clear that Plaintiffs Bodnar and
Reed are "unable to recover under the [FLSA] or the LWPA." If the
jury's determination of willfulness requires application of the two

14

year statute of limitations, "several plaintiffs [would be left] with only unjust enrichment claims." (Rec. Doc. No. 77 at 17). However, the fact that some claims may eventually be barred by the applicable statute of limitations does not mean the law provides no other remedy; Plaintiffs' own syntax and diction make it clear that other remedies are currently available.

The second amended complaint appears to waive all claims for damages made by Plaintiffs Bodnar and Reed under any theory of recovery, save a cause of action sounding in unjust enrichment. Additionally, it would appear that only Plaintiffs Bodnar and Reed's claims of unjust enrichment may be allowed to proceed against all defendants with such claims, at this juncture.

G.   <u>Automatic Stay - 11 U.S.C. § 362</u>

Title 11 United States Code section 362, regarding an automatic stay of certain proceedings states, in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

"Numerous courts have found that actions against solvent codefendants generally are not stayed by an insolvent codefendants's filing of bankruptcy." *In re Babcock & Wilcox Co.*, 2001 WL 536305, at *2 (E.D. La. May 18, 2001) (citing *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147 (5th Cir. 1987); *Teachers Ins. and Annuity Ass'n of America v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1329-30 (10th Cir. 1984); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126-27 (4th Cir. 1983); *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196-97 (6th Cir. 1983); *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 4-5 (1st Cir. 1983), *cert. denied*, 463 U.S. 1247, 104 S.Ct. 34 (1983); *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir.1983) (*per curiam*)).

Defendant Bourbon Saloon Incorporated d/b/a Mango Mango and Old Absinthe House f/k/a Conti Management Group, Inc. f/k/a Dantes of Decatur, Inc. f/k/a Newport Corporation is the only debtor named in the related bankruptcy proceeding pending in United States Bankruptcy Court for the Eastern District of Louisiana, Case No. 11-11518. At issue here is whether the automatic stay provision applies, or rather extends to the Debtor's co-defendants. Generally, an automatic stay pursuant to 11 U.S.C. § 362(a)(1) acts to stay proceedings against the debtor and does not extend to

16

third-parties or co-defendants.[10]  *Matter of S.I. Acquisition, Inc.*,
817 F.2d 1142, 1147 (5th Cir. 1987).

In *S.I. Acquisition*, the court explained that extension of the
automatic stay under 362(a)(1) to non-bankrupt defendants "who were
not related to or components of the debtor did not advance the
underlying purposes of the automatic stay provisions." *Boudreaux
v. Americon, Inc.*, 2000 WL 1285400 at *2 (E.D. La. Sep. 12, 2000)
(citing *Matter of S.I.*, 817 F.2d 1142 (5th Cir. 1987)).  However,
"in very limited situations, a section 362(a)(1) stay may apply to
actions against nonbankrupt defendants." *Matter of S.I.*, 817 F.2d
at 1147; *see also Creighton v. Fleetwood Enters., Inc.* 2009 WL
1210881 at *1 (E.D. La. May 4, 2009) (citing *In Re S.I.
Acquisition*).  Those "very limited situations" have been recognized
"in circumstances where the debtor and nonbankrupt party can be
considered one entity or as having a unitary interest," in those
cases, "a section 362(a)(1) stay may suspend the action against a
nonbankrupt codefendant." *Boudreaux*, 2000 WL 1285400 at *2.  The
court in *S.I. Acquisition* stated:

> This 'unusual situation,' it would seem arises when there
> is such identity between the debtor and the third-party

---

[10]*See also Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1197 (6th
Cir. 1983) (noting that "[t]he legislative history of § 362 discloses a
congressional intent to stay proceedings against the debtor, and no other, to
preserve the status quo of the estate in an effort to ultimately effect and
implement, to the extent possible, a successful and equitable reorganization or
liquidation.").

17

> defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

*S.I. Acquisition*, 817 F.2d at 1148.[11]  Here, there appears to be no "unusual situation" warranting extension of the stay to defendants other than the debtor in the related bankruptcy proceeding noted *supra*.  As such, the automatic stay of 11 U.S.C. § 362(a) applies only to proceedings against the debtor in the related bankruptcy proceeding and no further; trial against the remaining defendants shall proceed according to the scheduling order to be issued following a scheduling conference with the Case Manager.

New Orleans, Louisiana, this 29TH day of September, 2011.

UNITED STATES DISTRICT JUDGE

---

[11]The *S.I. Acquisition* court noted that other courts, in those "very limited situations," have found "that a nonbankrupt codefendant may be protected by the automatic stay of section 362(a)(1) if extension of the stay contributes to the debtor's efforts of rehabilitation or the debtor and nonbankrupt are closely related." *Id.* at 1147.  (citing *Teachers Insurance*, 803 F.2d at 65; *In re Johns-Manville Sales Corp.*, 33 B.R. 254, 263-64 (Bankr.S.D.N.Y.1983); *In re Old Orchard Investment Co.*, 31 B.R. 599, 603 (Bankr.W.D.Mich.1983); *In re Johns-Manville Sales Corp.*, 26 B.R. 405, 410 (Bankr.S.D.N.Y.1983); *In re Otero Mills, Inc.*, 25 B.R. 1018, 1020-21 (Bankr.D.N.M.1982); *In re Metal Center*, 31 B.R. 458, 462 (D.Conn.1983)).

18